**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **Sanford School Department**<br><br>           Plaintiff<br><br>v.<br><br>**Mr.** and **Ms. Doe** as parents of **John Doe**, a minor<br><br>           Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil No. _____<br>)<br>)<br>)<br>) |

**COMPLAINT**

Plaintiff Sanford School Department ("Sanford" or the "District") files this action against Defendants Mr. and Ms. Doe, asserting as follows:

**NATURE OF THE ACTION**

1. This is an action commenced under the Individuals with Disabilities Education Act, as amended, 20 U.S.C. §§ 1400 *et seq.* ("IDEA"), supplemented by Maine's laws regarding the education of disabled students, 20-A M.R.S.A. §§ 7000 *et. seq.*, and their implementing federal and state regulations.

2. This action by Sanford seeks judicial review of an administrative decision issued by a Maine Department of Education hearing officer, pursuant to the IDEA, 20 U.S.C. § 1415(i)(2), wherein the hearing officer erroneously concluded that school districts cannot avail themselves of expedited due process proceedings to challenge stay put even when a student presents a substantial likelihood of injury to themselves or others.

3. The administrative decision and order were issued on December 15, 2024, by a hearing officer appointed by the Maine Department of Education following a due process hearing conducted pursuant to the IDEA, 20 U.S.C. § 1415(f).

1

## JURISDICTION AND VENUE

4. The Court's jurisdiction is based upon 20 U.S.C. §§ 1415(i)(2)(A), 1415 (i)(3)(A)-(C) (IDEA), and 28 U.S.C. § 1331 (federal question).

5. Venue lies in this District under 28 U.S.C § 1391(b), because a substantial part if the events or omissions giving rise to the claims occurred in this District, and the parties are located in this District.

## PARTIES

6. Sanford School Department is the local education agency responsible for providing a free appropriate public education to children with disabilities who reside with their parents in Sanford.

7. Defendants Mr. and Mrs. Doe ("the Parents") are residents of Sanford. They are the parents of John Doe, a 10-year old child with the disability of Emotional Disturbance.

8. In seeking to reverse the hearing officer's order under the IDEA, Sanford is a party "aggrieved by the findings and decision" of a due process hearing officer within the meaning of the IDEA, 20 U.S.C. § 1415(i)(2)(A).

## **FACTS COMMON TO ALL COUNTS**

9. The Student has a long history of engaging in behaviors that have caused physical or emotional injury to himself or others. Even before starting school, the Student struggled in daycare. Since becoming a Sanford student, he has engaged in behaviors that cause injury to himself or others. These behaviors have persisted and intensified throughout his educational experience at Sanford.

10. During his second-grade year, while attending Margaret Chase Smith Elementary School ("MCS"), the Student's behavior continued to degrade. He was routinely assaultive to both staff and students, which resulted in numerous injuries.

11. While he was in second grade, after an incident where the Student's dangerous behavior resulted in injury to a staff member, the IEP team convened an emergency team meeting. At the meeting, staff shared that other students were afraid of the Student and did not socialize with him. Staff felt that they could not keep him and others safe. The IEP team recommended placement at a special purpose private school due to an inability to provide a Free Appropriate Public Education ("FAPE") at MCS.

12. However, at that time, the Parents asserted that the Student did not need a day treatment placement and claimed that MCS triggered his violent behavior. Based on the Parents' request, the District agreed to try a placement for the Student at a different elementary school within the District, Sanford Pride Elementary School ("Pride"), for the remainder of his second-grade year. The Student's behavior did not improve at Pride, and the District and Parents agreed to place him at Sweetser for his third grade year.

13. Sweetser is a special purpose private school located in Saco, Maine for students grades K-12. Sweetser provides comprehensive behavioral health care options for children, including school-based child counseling, behavioral therapy, as well as a variety of other services. It offers a high staff-to-student ratio, a significantly more structured and predictable school day, constant access to a clinician, fewer academic task demands, and high-level staff training.

14. While at Sweetser, the Student's behavior was significantly better, with only two known instances of restraint or seclusion. This change in behavior was due to the elements that make up a day-treatment program's therapeutic milieu.

15. Because of his behavioral success at Sweetser, the District agreed to transition the Student back to MCS for his fourth grade year (2024-2025). This was done in an effort to honor the Parents' request and maintain a positive working relationship.

16. Despite best efforts, the Student reverted to engaging in significant physical aggression almost immediately upon his return to MCS in September 2024. However, given his bigger size and increased strength, the injuries became even more significant and harmful.

17. On September 10, 2024, the Student choked a peer because he thought the peer was going to pinch him (the peer was not). The peer had red marks on his neck from this incident, had to see the nurse, and was visibly shaken.

18. On September 27, the Student refused to evacuate for a fire drill.

19. On September 30, 2024, the Student threw a chair at staff, kicked the walls and destroyed the staff's office, and eventually barricaded himself alone, in the room, preventing staff from entry. He then opened an exterior window, and began to push the screen out, apparently intending to jump out of the window and elope. Staff ran outside to stop him from exiting the window.

20. On October 2, 2024, the Student threw his desk, chairs, and other classroom objects towards staff members. He then climbed onto a windowsill stating he was going to kill himself and opened the window and screen, again appearing ready to jump out. Unlike the prior incident, however, this window was on the second floor of the building and

below it was compacted dirt and tarmac. When staff intervened to prevent the Student from jumping out the second-floor window, he stomped on their feet.

21. On October 3, the Student attempted to cut a peer with scissors two times.

22. On October 4, the Student threw classroom objects, including sharpened pencils, at staff, threatened to kill and punch them, charged at staff, and when a staff member tried to block him from eloping, he punched her and grabbed her breast hard, two times, ripping it out of her bra.

23. The Student was suspended as a result of the October 4 incident, and his Parents were asked to come pick him up. Upon their arrival to school, the Parents were irate, and Mr. Doe screamed at the MCS Principal and the Student's classroom teacher alleging they were "baiting" the Student. Mr. Doe stated MCS staff were liars, that they couldn't be trusted, and that he would "force their resignations." The Parents also stated they would not return the Student to MCS. All this behavior occurred in front of the Student.

24. The Parties held an emergency IEP meeting on October 18, 2024, to conduct an annual review, a Chapter 33 review, and address the concerns raised by the Parents on October 4. Going into this meeting, Sanford believed the Student would be returning to MCS. However, as the meeting progressed, it became clear that, given the circumstances, the Student could not receive a FAPE at MCS. The Student was significantly behind in his academics and spent so much of his day being dysregulated that he was unable to access new learning. The District was also concerned about the fact that the Student had witnessed his Parents telling MCS staff they were not trustworthy. The District feared that his behavior and inability to access instruction would only get worse at MCS as a result of witnessing this interaction. The Team discussed multiple options, and in

particular, proposed that the Parents, MCS staff, and the Student have a restorative meeting to demonstrate they were all working together on the Student's behalf. Against their then-attorney's advice, the Parents flatly refused.

25. Based on his dysregulation and inability to access instruction at MCS, and his prior success at Sweetser, the IEP team determined that Sanford's Bridge Program was the least restrictive environment for the Student to make educational and functional progress.

26. The Bridge Program ("Bridge") is a special purpose public school in the Sanford School Department. Bridge offers a smaller setting, high teacher-to-student ratio, with significantly more clinical support. The staff includes highly-trained teachers, a neuropsychologist who is in the program 24 hours per week, two counselors, and an LCSW. Students have much more flexibility at Bridge, while also achieving the consistency and structure required to allow them to feel safe.

27. The IEP team determined that the Student's programming at Bridge would be a full-day program, with a small group of same-aged peers. No one at the meeting believed the placement decision was disciplinary in nature, and no one at the meeting, including the Parents' attorney, suggested a manifestation determination was required. The Parents were informed the Student could return to MCS the following Monday, but his Parents declined to send him. The Student's placement at Bridge went into effect on October 28.

28. The Parents' submitted a due process hearing request with the Maine Department of Education, dated October 26, 2024, alleging the placement at the Bridge Program was not the least restrictive environment and therefore was inappropriate under the IDEA. (Case No. 25.040H) (the "Parents' DP Hearing Request"). The Parents specifically invoked their right to "stay put," in an effort to keep the Student at MCS.

29. In light of the Parents' request for "stay put," the District filed an expedited due process hearing request, alleging that returning the Student to MCS would be substantially likely to result in injury to the Student or others (the "District DP Hearing Request").

30. On November 21, 2024, the Parties convened a prehearing conference relating to the District DP Hearing Request with Hearing Officer David C. Webb, Esq. The Parties agreed that the issues to be heard were (1) whether the Student was substantially likely to injure himself or someone else if he was returned to MCS; and (2) whether the Bridge Program is an appropriate interim alternative educational setting.

31. On November 21, witness lists and exhibits were due to the Hearing Officer.

32. On November 27, late in the afternoon on the day before Thanksgiving, the Hearing Officer added another issue for consideration, over the objection of Sanford: whether or not the determination to move the Student to the Bridge program was a "disciplinary" decision. The District was not permitted to add documents or witnesses to address this issue.

33. The expedited due process hearing on the District DP Hearing Request was heard by Hearing Officer David C. Webb, Esq., on December 2, 2024, the Monday following Thanksgiving.

34. Hearing Officer Webb issued a final order on the District DP Hearing Request on December 15, 2024. The Order held that the District improperly invoked the expedited hearing process because the initial removal of the Student from MCS to Bridge was not made for "disciplinary" reasons. The Order ignores that the Family had filed a due process hearing and invoked stay put – the basis for the District's filing of the expedited

due process hearing request. Hearing Officer Webb subsequently dismissed the case (Docket No. 25.041X).

35. The Parents' DP Hearing Request is scheduled for a hearing on January 6 and 9, 2025 and a decision is expected in mid-February.

36. If the Student is permitted to attend MCS program from now until a decision is entered in regards to the Parents' DP Hearing Request, the District, it's students and staff will suffer irreparable injury in the form of physical injury to students and staff and possible attendant emotional trauma.

37. Conversely, the Student will suffer no damage if he attends school in a special purpose school that all educators have testified is appropriate for him.

38. The public interest weighs in favor of the student being placed at the Bridge program, an appropriate interim alternative educational setting.

## COUNT I

**(Review of Due Process Determination Under the Individuals with Disabilities Education Act, 1. 20 U.S.C. § 1415 and 20-A M.R.S.A. § 7207-B)**

39. Sanford repeats the allegations set forth in Paragraphs 1 through 33 of this Complaint.

40. Federal and state special education laws authorize the Court to conduct judicial review of the administrative decision and to "grant such relief as the court determines is appropriate." This authority includes the power to reverse or vacate the hearing officer's findings and order.

41. The hearing officer committed legal and factual error by finding that the District was not permitted to use the expedited due process procedure to reverse the normal operation of the stay put provision under 20 U.S.C. § 1415(k)(3). This error allowed the hearing

officer to order the Student to return to MCS during the pendency of the underlying proceeding.

42. The hearing officer further committed legal and factual error by failing to address in any way whether the Student was substantially likely to injure himself or someone else if he were returned to MCS. This error allowed the hearing officer to order the Student to return to MCS during the pendency of the underlying proceeding.

43. The District, its students and staff will be irreparably injured if the Student is permitted to return to school at MCS pending a decision on the merits of the Parents' DP Request.

***Wherefore***, the Sanford School Department respectfully requests that the Court"

1. Enter a temporary restraining order and preliminary injunction that requires the Student remain in the interim alternative educational setting until a final decision on the merits of the Parents' DP Request has been issued in order;

2. Reverse or vacate the hearing officer's order dismissing the District's expedited due process hearing request;

3. Find that the District is permitted to use the expedited due process hearing request to challenge the normal operation of stay put; and

4. Award such other further relief as the Court may deem just and proper.

Dated: December 16, 2024

                                                  Respectfully submitted,

                                                  ***/s/ Eric R. Herlan*** _____
                                                  Eric R. Herlan
                                                  Isabel Ekman

*Attorneys for Plaintiff Sanford School Department*

**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Complaint is being served on Defendants by email at paulskaltsis90@gmail.com and klanctot93@gmail.com and by hand at 19 B Emery St., Sanford, ME 04073.

Dated: December 16, 2024              _/s/ Isabel B. Ekman____

10