UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| SANFORD SCHOOL DEPARTMENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-00436-LEW |
| | ) | |
| MR. and MRS. DOE, as parents of John Doe, a Minor | ) ) | |
| | ) | |
| Defendants | ) | |

**ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER**

The Sanford School Department ("Sanford") brings this action to obtain judicial review of the order of a Maine due process hearing officer that a school administrative unit ("school") has no standing to petition for expedited review of a student's special education placement based on its concern for the likelihood of injury to the student or others unless the school first finds that the student's conduct is deserving of discipline. More pointedly, Sanford seeks relief in the form of a temporary injunction that allows for its interim alternative placement to go into immediate effect and persist until such time as a Maine hearing officer enters a ruling as to the student's appropriate placement. The matter is before the Court pursuant to 20 U.S.C. § 1415(i). Although the matter arises on a motion for a temporary restraining order, both parties have appeared and presented arguments for and against the requested remedy, both on the docket through serial filings and at oral argument.[1]

---

[1] Both parties are represented by counsel. Counsel agreed to a temporary stay of the action through February 3, 2025, stating that they reached agreement on a possible alternative placement for the Student. Mot. to Stay (ECF Nos. 10, 13). However, the effort to voluntarily resolve this matter failed. On January 17, 2025, Sanford filed its Motion for Preliminary Injunction (ECF No. 15), advancing the same arguments presented

**BACKGROUND**

Through its Motion (ECF No. 5), "Sanford seeks a temporary restraining order that will keep the [Student] in a full-day specialized program with staff specially trained to work with children with the behavioral challenges demonstrated by this child, rather than returning him back to a less structured environment where he has already inflicted unfortunate injuries and would likely continue to do so." Mot. for TRO at 1. As informed by Sanford's Complaint, this means that the pending motion is seeking a temporary injunction "until a final decision on the merits of the Parents' [Due Process] Request has been issued." Compl. at 9.

In the order under review (ECF No. 1-2), the Hearing Officer entered findings of fact. These findings recount the history of the Student's disability and participation in programming at Sanford schools. The findings reflect that Sanford repeatedly imposed suspensions on the Student in the wake of disruptive behaviors threatening to his own well-being and the well-being of others, including assaultive behavior. After attempting to deliver programming designed to keep the student in a more mainstream placement, the Student's IEP Team[2] recommended placement in its

---

in its original Motion for Temporary Injunction (ECF No. 5). The Does moved to strike the same. Defs.' Motion to Strike (ECF No. 16). On January 21, the Does filed their Opposition and included in it what is, effectively, a cross-motion for immediate relief. Defs.' Opp'n to Pl.'s Mot. for TRO and Emergency Mot. to Compel Pl. to Comply with Stay Put Order (ECF No. 18). On January 22, I held a hearing on the matter. At this point, the distinction between a TRO and a preliminary injunction appears to be immaterial because both parties have appeared and have been heard by the Court on the request for temporary injunctive relief, which is the sum total of the relief sought in Plaintiff's Complaint. Furthermore, it is evident that both parties seek a prompt resolution to the conflict that brings them to this Court. While the declarations of record reflect that the parties have a significant dispute over the proper placement for the Student, that dispute should be resolved at the administrative level in the first instance. I am not going to conduct a preliminary injunction hearing on the Student's most appropriate placement because it would bypass the administrative process and would effectively allow state hearing officers to outsource to federal courts difficult educational placement determinations that are assigned to them by federal law, and concerning which they presumably have some degree of expertise, subject only to deferential review in federal court as to their factual findings. *Doe v. Newton Public Sch.*, 48 F.4th 42, 53 (1st Cir. 2022).

[2] Under the auspices of the Individuals with Disabilities in Education Act, a special education student's IEP Team is responsible for the development of the student's "individualized education program."

Bridge Program, a more restrictive placement within the public school setting. In response, the Student's parents filed for a due process hearing. That request would normally proceed on a less urgent timetable while the Student remained in the program he had before the new placement was ordered. *See* 20 U.S.C. § 1415(j) (stay put/maintenance rule). However, Sanford then filed an appeal requesting an expedited hearing based on its concern that the Student or someone else is substantially likely to experience injury if the Student returns to the stay put placement. If honored, Sanford's expedited request would call for the Hearing Officer to assess the situation more rapidly and either support or reject Sanford's stated concerns. In the meantime, the Student would remain in the "interim alternative placement," meaning the new, more restrictive placement. *See* 20 U.S.C. § 1415(k); 34 C.F.R. § 300.532(a).

Rather than resolving the dispute over the likelihood of injury, the Hearing Officer determined that there was a preliminary question whether Sanford sought the change of placement as a "disciplinary" measure. Finding that Sanford had not adopted a disciplinary approach,[3] the Hearing Officer summarily dismissed Sanford's appeal based on a finding that "MUSER §XVI.21.C.(4), limits the expedited hearing process for *persons who have been removed from school for disciplinary purposes*."[4] Order at 12 (emphasis in original). Because he dismissed Sanford's appeal, the Hearing Officer concluded that the Student would remain in the less

---

[3] Relying on hearing testimony from the Principal of the Student's school, the hearing officer focused on the Principal's statement "that while suspensions are a form of discipline and the Student's behaviors . . . were violations of the student code of conduct, the suspension that was given to the Student was not considered a form of discipline." Hr'g Officer Order ¶ 23. Under the law and applicable regulations, a school may remove a student from his or her ordinary placement for "not more than 10 consecutive school days" for each separate incident of misconduct, without having to first determine whether the misconduct deserves a disciplinary approach. 34 C.F.R. § 300.530(a), (b).

[4] MUSER refers to Maine Unified Special Education Regulation Birth to Age Twenty-Two, a set of special education regulations maintained by the Maine Department of Education. Chapter XVI of MUSER sets out dispute resolution procedures and provides that both students and school administrative units can petition for relief in the form of a due process hearing request relating to "any matter" including student placement. MUSER XVI.1.A(3).

restrictive, stay put placement pending the resolution of the Parents' due process hearing request. Given these rulings, the Hearing Officer avoided reviewing on an expedited basis the dispute concerning Sanford's contention that there is a substantial likelihood of an injury being sustained by the Student or others if the Student returns to the stay put placement. The Hearing Officer's approach also dictated application of the stay put rule without regard to whether "any unique circumstances on a case-by-case basis" warrant an exception to the stay put rule. *See* 34 C.F.R. § 300.530(a).

## DISCUSSION

A motion for a temporary restraining order seeks extraordinary relief and should be denied unless the movant makes a persuasive showing of a likelihood of success on the merits, a threat of irreparable injury in the absence of injunctive relief, a favorable balance of the relative burdens that would befall the parties if the relief is granted, and a lack of harm to the public interest. *Maine Forest Products Council v. Cormier*, 51 F.4th 1, 5 (1st Cir. 2022).

Through its Motion, Sanford seeks an order from this Court that authorizes placement of the Student in the more restrictive placement (the "Bridge Program") pending further review by the Hearing Officer. For reasons that follow, I find that Sanford clearly succeeds with its assertion that the Hearing Officer erred, that the disregard of the school's statutory right to an expedited hearing coupled with an interim placement is appropriately treated as resulting in irreparable injury that can only be remedied through temporary injunctive relief, and that the burdens and benefits and public interest favor temporary injunctive relief pending *expedited* proceedings on remand (not the more prolonged process required by the parents' due process appeal of the IEP Team's placement decision). I emphasize that proceedings must be expedited on remand because Sanford's § 1415(k)(3)(A) appeal requires an expedited process that ordinarily should precede a

final determination of the parents' parallel due process appeal of the IEP Team's placement decision. Proceedings on both matters may be joined only if a hearing officer can address both appeals within an expedited timeframe.

### A.     Likelihood of Success

The Maine Unified Special Education Regulation ("MUSER") implements the Individuals with Disabilities in Education Act, 20 U.S.C. §§ 1400 *et seq*., and related state law, 20-A M.R.S. Ch. 303. Consistent with federal law, MUSER Chapter XVI, section 20 sets forth default rules concerning student treatment while due process or related proceedings are pending. It specifies that a student "must remain in his or her current educational placement" during such proceedings unless the parents and the school agree otherwise. MUSER XVI.20.A. But Chapter XVI also specifies that a school may appeal a placement when it "believes that maintaining the current placement . . . is substantially likely to result in injury to the child or others," MUSER XVI.21.A, and that a hearing officer may order a change of placement if he or she agrees with that assessment, MUSER XVI.21.B(2)(b). All of this is consistent with federal law. However, Chapter XVI also provides that an expedited due process hearing "shall only be available for persons who have been removed from school for disciplinary purposes." MUSER XVI.21.C, C(4).

Relying entirely on MUSER Chapter XVI, Section C, concerning the availability of expedited due process hearings "only . . . for persons who have been removed from school for disciplinary purposes," the Hearing Officer concluded that MUSER allows a school to request an expedited hearing and make an interim placement tied to likelihood of injury only if the school first adopts a disciplinary[5] approach that seeks to remove the student from school rather than

---

[5] MUSER Chapter XVII addresses discipline and begins with a wide-open allowance for "case-by-case" evaluations of "unique circumstances" when a student with a disability "violates a code of student conduct." MUSER XVII.1.A.

5

change the student's placement at school.  Whether this is a proper interpretation of MUSER is open to considerable debate.  For example, "persons" may not mean "schools."  Furthermore, the Hearing Officer's reading calls into question just exactly what the point would be of an appeal tethered to the likelihood of injury if the appeal would have no immediate impact on placement and did not proceed on an expedited basis.  And the threat of injury may be substantial regardless of the apparently more abstract question of whether the removal from school was for "disciplinary purposes."

The answer here is less vexing.  Regardless of whether the Hearing Officer properly construed MUSER Chapter XVI, Section C, federal law does not run parallel to the approach taken by the Hearing Officer.  Federal law not only gives the school a right to appeal a placement based on a stated concern for the substantial likelihood of injury to the student or others, but also requires expedited procedure on the appeal and an "interim alternative" placement other than the stay put placement during the expedited appeal process.  20 U.S.C. § 1415(k)(3)(A), (4)(A); *see also K.C. for M.D. v. Reg'l Sch. Unit 73*, 616 F. Supp. 3d 63, 75 (D. Me. 2022) ("[W]hether a proceeding is disciplinary or not does not dictate whether the underlying conduct or behavior 'violated a code of student conduct' or whether 'special circumstances' may exist to authorize school personnel to appeal what they deem to be a potentially injurious placement decision . . . ."].[6]

---

[6] The expedited appeal process authorizes a hearing officer to extend the interim alternative placement by as many as 45 days if the hearing officer agrees that an earlier return to the preexisting placement is substantially likely to result in injury to the student or others. *Id.* § 1415(k)(3)(B)(ii).  While, ordinarily, an interim alternative placement cannot exceed 10 days if the misconduct was a manifestation of the disability, *id.* § 1415(k)(1)(B), an appeal based on likelihood of injury extends that timeframe by as many as 30 days "pending the decision of the hearing officer," *id.* § 1415(k)(4)(A).  Furthermore, because the IEP Team has ordered a change of placement to the interim alternative placement, a state hearing officer may uphold the change of placement at the conclusion of the parent's due process hearing request.  While it is concerning that proceedings before this Court already have consumed a number of school days due to the parties' agreement to a short stay of proceedings in this Court, I conclude that it is most appropriate to permit the process to run its course on remand.

Because the Hearing Officer's application of MUSER conflicted with federal law, conflict preemption applies here. *Maine Forest Products Council*, 51 F.4th at 6. Simply stated, federal law says that a school may file an appeal and be heard on an expedited basis, whereas a state regulation, at least as construed by the Hearing Officer, says otherwise. In this situation, federal law is supreme.[7] Accordingly, I find that Sanford has succeeded on the merits of its contention that it is entitled to maintain the interim alternative placement pending an expedited hearing process.[8]

**B.     Irreparable Injury**

The basic equitable contours of "irreparable injury" are that the party seeking an injunction faces the likelihood of a substantial and immediate injury and the relief that might eventually come from the application of legal remedies will be inadequate to rectify the injury. *Joyce v. Town of Dennis*, 720 F.3d 12, 26 (1st Cir. 2013). Here, the injury arises from the hearing officer's dismissal of Sanford's statutory right to impose an interim alternative placement pending an appeal subject to an expedited process. There is no after-the-fact legal remedy for this legal error. Once the Hearing Officer extinguished Sanford's expedited appeal, Sanford suffered a substantial and immediate injury to its procedural and substantive right under the IDEA to appeal a placement

---

[7] I am not persuaded by the Does' argument that *negating* a school's right to appeal based on a concern for substantial likelihood of injury involves a state enhancement of the procedural protections specified in federal law. *See* Defs.' Suppl. Legal Auth. (ECF No. 21-1) (citing *Burlington v. Dep't of Educ.*, 736 F.2d 773, 784-85 (1st Cir. 1984) (discussing "cooperative federalism" and the ability of states to elaborate on procedural and substantive protections under the IDEA and analogous state law)). Certainly, the Maine Department of Education can fill in gaps and supplement and enhance special education programming in ways that favor students, but it cannot override procedures or substantive rights expressly afforded by Congress.

[8] For the same reason, I reject the Does' argument that the initiation of this proceeding was an act of contempt. *See* Defs.' Opp'n at 10.

based on its concern over a substantial likelihood of injury to a member of the school community. For this reason, I am persuaded by Sanford's showing of irreparable injury.[9]

C.    **Balance of Equities and the Public Interest**

The burdens arising from this case are burdens dictated by federal law. The allowance of an interim alternative placement is statutorily established and all that is needed to trigger it is the filing of the appeal based on a concern for the substantial likelihood of injury. Furthermore, the alternative placement will endure only pending the expedited appeal proceeding, unless the hearing officer finds cause to extend it. Under these circumstances, neither the balance of relative impositions nor the public interest militates against an award of temporary injunctive relief that is set to expire upon the conclusion of the expedited administrative review of Sanford's substantial-likelihood-of-injury appeal.

## Conclusion

Given the foregoing analysis, Plaintiff's Motion for Temporary Restraining Order (ECF No. 5) is GRANTED, as follows: The interim alternative placement will remain in place pending an expedited administrative determination of Sanford's § 1415(k)(3)(A) placement appeal.

No further proceedings appear to be necessary in this case. Because the relief requested in Defendant's Opposition (ECF No. 18) is diametrically opposed to my assessment that the Hearing

---

[9] I do not reach the factual dispute that informs Sanford's appeal to the hearing officer or the Defendants' request for various emergency relief. It is apparent on the record that there were a number of recent behaviors that warrant consideration such that Sanford did not file an appeal in the absence of any cause. Defendants contend that the appeal to the Hearing Officer and this TRO proceeding in federal court are "petty act[s] of retaliation," Defs.' Opp'n at 9, and that Sanford's difficulty with the Student is a function of its own failures to implement appropriate programming, *id.* at 12. Defendants also request that I enter findings on these claims and award them substantive and monetary relief. *Id.* at 14. The Hearing Officer needs to consider these competing contentions before they come to this Court, and because my ruling is in favor of Sanford on the limited legal issue presented in this case, this is not the proper occasion for me to grant substantive relief related to the Student's programming or his parents' financial harm.

Officer erred as a matter of law, the cross-motion for emergency relief is DENIED (ECF No. 19). Additionally, because a temporary injunction is awarded on the Motion for TRO after notice and hearing and directs that the administrative proceedings on Sanford's appeal be resolved on an expedited basis, Plaintiff's Motion for Preliminary Injunction (ECF No. 15) is DISMISSED AS MOOT.

      The matter of Sanford's appeal is hereby remanded for further proceedings consistent with this Order.

SO ORDERED.

      Dated this 24th day of January, 2025.

/s/ Lance E. Walker  
Chief U.S. District Judge
